UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QING CHANG,

                Plaintiff,

-v-

UR MENDOZA JADDOU, et al.,

                Defendants.

CIVIL ACTION NO. 24 Civ. 6565 (JPC) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE JOHN P. CRONAN**, United States District Judge:

### I. INTRODUCTION

On June 28, 2021, pro se Plaintiff Qing Chang ("Mr. Chang"), a resident of China, applied for asylum (the "Application") in the United States. (ECF No. 1 (the "Complaint") at 3; see ECF No. 10-1 ¶ 10). As of August 30, 2024, his Application had not been adjudicated (see ECF No. 1 at 4), and he filed this action under the Mandamus Act, 28 U.S.C. § 1361, and Administrative Procedure Act, 5 U.S.C. § 555 and 701 et seq. ("APA"), seeking an order compelling Alejandro Mayorkas, then Secretary of the Department of Homeland Security, and Ur Mendoza Jaddou, then Director of United States Citizenship and Immigration Services ("USCIS") (together, the "Government")[1] to render a decision as to the Application. (Id. at 1, 5–6).

The Government now moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Complaint does not allege any basis for relief

---

[1] The Clerk shall update the docket to reflect that (1) Kristi Noem is now the Director of the Department of Homeland Security and (2) Kika Scott is now the Acting Director of USCIS. See Fed. R. Civ. P. 25(d).

under the Mandamus Act or the APA. (ECF No. 9 (the "Motion")). For the reasons that follow, we respectfully recommend that the Motion be GRANTED and that this action be dismissed without prejudice.

## II. BACKGROUND

### A. Statutory Background

#### 1. The Asylum Application and Review Process

The Immigration and Nationality Act ("INA") permits noncitizens present in the United States to apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify for asylum, an applicant must establish either past persecution or a well-founded fear of future persecution on the basis of his or her race, religion, nationality, membership in a particular social group, or political opinion. Id. at §§ 1101(a)(42)(A); 1158(b)(1)(B)(i). Asylum provides a non-citizen with ongoing legal status in the United States, a pathway to applying for legal permanent residence, and the ability to petition for derivative asylum status for immediate family members. See id. at §§ 1158(b)(3)(A); 1158(c)(1)(A); 1159(b). While an asylum-seeker's application is pending, he may apply for authorization to work legally in the United States. 8 C.F.R. § 208.7(a)(1); see also Alaei v. Holder, No. 15 Civ. 8906 (ODW), 2016 WL 3024103, at *3 (C.D. Cal. May 26, 2016) ("Plaintiff can legally live and work in the United States pending adjudication of her application.").[2]

Section 1158(d) directs the Attorney General to establish a procedure to evaluate asylum applications. 8 U.S.C. § 1158(d)(1). The statute provides that, absent exceptional circumstances, government officials should (1) conduct an initial interview within 45 days of the filing of an asylum application, and (2) render a final decision within 180 days of the application. Id. at

---

[2] Unless otherwise indicated, internal citations and quotation marks are omitted from case citations.

§ 1158(d)(5)(A)(ii)–(iii).  It further provides, however, that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  Id. at § 1158(d)(7).

USCIS may provide an expedited decision as to an asylum application if the applicant can show he or she faces, inter alia, "[s]evere financial loss" or can establish "[e]mergencies or urgent humanitarian situations" requiring an accelerated adjudication.  USCIS, EXPEDITE REQUESTS, https://www.uscis.gov/forms/forms-information/how-make-expedite-request  (last visited Feb. 10, 2025).  Filing a request for an expedited decision does not, however, guarantee an applicant that relief; rather, USCIS has "sole discretion" to decide whether to grant or deny a request.  Id.; see Ruan v. Wolf, No. 19 Civ. 4063 (ARR), 2020 WL 639127, at *2 (E.D.N.Y. Feb. 11, 2020) ("The website appears to indicate that there is no opportunity to appeal or receive judicial review of denials of expedite requests.").

### 2. The "Last-In First-Out" Review System [3]

USCIS's current asylum interview scheduling procedure prioritizes applications on a "last-in, first-out" ("LIFO") basis; i.e., the agency schedules asylum interviews for the most recently filed asylum cases before older applications.  (ECF Nos. 10-1 ¶ 3; 10-2 ¶ 11).  The LIFO system seeks to "reduce[ ] the incentive engendered by the [application] backlog to file non-meritorious

---

[3] The facts in this section derive from both affidavits submitted with the Motion and information gleaned from government websites.  See Perez v. Ahlstrom, No. 10 Civ. 1299 (VLB), 2011 WL 2533801, at *2 (D. Conn. June 27, 2021) ("[T]he Court may also properly consider matters of which judicial notice may be taken, . . . including information on an official government website."); Crespo v. S.C. Johnson & Son, Inc., 394 F. Supp. 3d 260, 266 n.3 (E.D.N.Y. 2019) (taking "judicial notice of the [Environmental Protection Agency] website and the documents maintained on that site" in evaluating a motion to dismiss).

3

asylum applications" merely to obtain work authorization. (ECF No. 10-2 ¶ 11); see also USCIS, AFFIRMATIVE ASYLUM INTERVIEW SCHEDULING, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last visited Feb. 10, 2025) ("The aim is to deter individuals from using the asylum backlog solely to obtain employment authorization by filing frivolous, fraudulent, or otherwise non-meritorious asylum applications.").

B. **Factual Background**[4]

Mr. Chang is a Chinese citizen residing in the United States. (See ECF Nos. 1 at 3; 10-1 ¶ 10). On June 28, 2021, he filed the Application. (ECF No. 1 at 3).[5] As of August 30, 2024—the date he filed the Complaint—the Government had not adjudicated the Application despite Mr. Chang having "exhausted all administrative remedies, including [filing] expedite requests, [seeking] Congressional intervention, and filing [a request] with the [USCIS] Ombudsman[.]" (ECF Nos. 1; 13 at 3). The Complaint alleges that the Government's delay in acting has been unreasonable and that Mr. Chang has suffered financial consequences while waiting for a decision on the Application. (See generally ECF No. 1). Specifically, Mr. Chang alleges that the Government's delay in deciding the Application and in renewing his work authorization led to

---

[4] The facts in this section derive from (1) the allegations in the Complaint, which the Court presumes to be true for purposes of deciding the Motion, see Spoleto Corp. v. Ethiopian Airlines Grp., No. 21 Civ. 5407 (PAE), 2022 WL 329265, at *1 n. 1 (S.D.N.Y. Feb. 3, 2022), aff'd, 2022 WL 17574469 (2d Cir. Dec. 12, 2022) (summary order); (2) the allegations in Mr. Chang's Opposition to the Motion, see Evans v. City of New York, No. 21 Civ. 8660 (JPC), 2022 WL 1172740, at *1 n.1 (S.D.N.Y. Apr. 20, 2022); Henning v. N.Y.C. Dep't of Corr., No. 14 Civ. 9798 (JPO), 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016) ("Although this allegation appears in his opposition papers, the Court—consistent with its duty to liberally construe pro se pleadings—will credit Plaintiff's assertion in evaluating the sufficiency of his complaint."); and (3) affidavits submitted with the Motion, which the Court may consider under Federal Rule of Civil Procedure 12(b)(1), see Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1010–11 (2d Cir. 1986).

[5] Mr. Chang's filings do not indicate the grounds on which he seeks asylum.

"[e]mployment [c]hallenges[,]" eviction, and his resulting homelessness. (ECF No. 13 at 8).[6] If not for the Government's delay, Mr. Chang concludes, he "would never have ended up in this situation[.]" (Id.)

### C. Procedural Background

On August 30, 2024, Mr. Chang filed the Complaint, which raises two claims—one under the Mandamus Act (the "Mandamus Claim") and a second under the APA (the "APA Claim"). (See ECF No. 1 at 3).[7] He seeks several, sometimes conflicting, forms of relief, including (1) issuance of a writ of mandamus compelling the Government to act on the Application within 30 days; (2) an order compelling the Government to schedule an asylum interview and to decide the Application within 120 days of the interview's occurrence; (3) a declaration that the Government's delay in deciding the Application has harmed him financially; and (4) the submission of "regular progress reports . . . detailing the steps taken toward the adjudication of [the Application.]" (See ECF No. 1 at 5–6).[8]

On September 10, 2024, the Honorable John P. Cronan referred this action for general pretrial management and to issue a report and recommendation as to any dispositive motion. (ECF No. 6). On November 4, 2024, the Government filed the Motion. (ECF Nos. 9–10). On

---

[6] Mr. Chang concedes that his work authorization has not lapsed but that "employers are generally unwilling to hire individuals with uncertain work authorization statuses." (ECF No. 13 at 8).

[7] In the subsection of the Complaint entitled "Jurisdiction and Venue[,]" Mr. Chang states in passing that he believes the Government violated his right to due process under the Fifth Amendment through its delayed action. (ECF No. 1 at 3). Given the subsection in which Mr. Chang invokes the Fifth Amendment, it does not appear to the Court that he intended to raise any constitutional claim. This conclusion is further supported by the fact that Mr. Chang has offered no factual basis for such a claim in either the Complaint or Opposition.

[8] Mr. Chang expressly states that he is not seeking monetary damages in this action. (See ECF No. 1 at 7).

5

November 19, 2024, Mr. Chang filed the Opposition (ECF No. 13), and on November 26, 2024, the Government filed a Reply (ECF No. 14).

### III. LEGAL STANDARDS

#### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). A court may properly refer to matters outside the pleadings when considering the existence of jurisdiction on a Rule 12(b)(1) motion. See Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1010–11 (2d Cir. 1986).

In a motion to dismiss pursuant to Rule 12(b)(1), "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). A challenge to the legal sufficiency of jurisdiction is "based solely on the allegations of the complaint or the complaint and exhibits attached to it," and thus "plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." Katz v. Donna Karan Co., LLC, 872 F.3d 114, 119 (2d Cir. 2017). But when a defendant makes a factual challenge, the defendant can "proffer[ ] evidence beyond the plaintiffs' pleading." Id. (cleaned up). Plaintiffs opposing such a motion must "come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in their pleading if the evidence proffered by the defendant

is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." Id. (cleaned up).

### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. See Iqbal, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

### C. Pro Se Considerations

"Where, as here, the plaintiff is pro se, his complaint must be construed 'liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests.'" Tsinberg v. City of New York, 20 Civ. 749 (PAE), 2021 WL 1146942, at *4 (S.D.N.Y. Mar. 25, 2021) (quoting J.S. v. T'Kach, 714 F.3d 99, 103 (2d Cir. 2013)). "This mandate applies with particular force when a plaintiff's civil rights are at issue." Id. (quoting Maisonet v. Metro. Hosp. & Health Hosp. Corp., 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). "Consistent with that approach, factual allegations made in a pro se plaintiff's opposition papers, or the attachments thereto, may be

considered as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint." Id. (quoting George v. Pathways to Housing, Inc., No. 10 Civ. 9505 (ER), 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012)).  That said, the Court need not accept allegations that are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint."  Fisk v. Letterman, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005).  Nor does pro se status "exempt a party from compliance with relevant rules of procedural and substantive law."  Maisonet, 640 F. Supp. 2d at 348.  Indeed, "even a pro se plaintiff 'must state a plausible claim for relief.'"  Tsinberg, 2021 WL 1146942, at *4 (quoting Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013)).

## IV. DISCUSSION

Mr. Chang invokes the Mandamus Act and the APA to compel the Government act on his Application.  (ECF No. 1 at 3–7).  In the Motion, the Government argues that (1) the Court lacks subject matter jurisdiction over the Mandamus Claim (ECF No. 10 at 16–18), and (2) the Complaint fails to state a claim under the APA (id. at 19–25).  As explained below, the Government is correct.

### A. The Mandamus Claim

In support of the Mandamus Claim, Mr. Chang alleges that the Government has "a statutory duty to process and adjudicate asylum applications within a reasonable period" (ECF No. 1 at 4) and that its failure entitles him to "a Writ of Mandamus compelling [the Government] to [act on the Application]" (id. at 5).  The Government asserts that the Court lacks jurisdiction to consider the Mandamus Claim.  (ECF No. 10 at 16–18).

1. **Legal Standard**

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The action that the plaintiff seeks to compel must be subject to positive command, plainly described, and free from doubt." Keane v. Chertoff, 419 F. Supp. 2d 597, 599 (S.D.N.Y. 2006). To obtain relief, a plaintiff must allege that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." Benzman v. Whitman, 523 F.3d 119, 133 (2d Cir. 2008); see Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989).

2. **Application**

   a. **Right to the Relief Sought**

As to the first element, to determine whether Mr. Chang has "a clear right to the relief sought[,]" Benzman, 523 F.3d at 133, the Court must determine the specific relief he seeks. As discussed above, the Complaint requests several forms of relief that are not perfectly compatible or consistent. For instance, it simultaneously seeks (1) an order "compelling the [Government] . . . to adjudicate [the Application] . . . within 30 days" and (2) an order for the Government to (i) schedule an asylum interview and (ii) decide the Application "within 120 days after the interview." (ECF No. 1 at 5). At the core of these inconsistent requests, however, is Mr. Chang's belief that he has a right to imminent Government action with respect to the Application.

Mr. Chang's belief is misplaced. First, to the extent the Mandamus Claim is based on the Government's failure to act within the timetable described in Section 1158 of the INA,

"[Section] 1158(d)(7) unequivocally denies asylum applicants a private right of action to enforce the procedural requirements found in that statute." Ngai v. Mayorkas, No. 22 Civ. 5358 (LDH) (JRC), 2024 WL 1346530, at *2 (E.D.N.Y. Mar. 29, 2024). Second, to the extent Mr. Chang bases his claim on the theory that the Government's delay in deciding the Application has been "unreasonable," that claim arises under the APA, not the Mandamus Act (see § IV.B, infra), and is therefore subject to dismissal. See Sharkey v. Quarantillo, 541 F.3d 75, 93 (2d Cir. 2008) (finding that a mandamus claim should be dismissed where it duplicated claims brought under the APA). Accordingly, we conclude that Mr. Chang does not have any "clear right" to the relief he seeks.

### b. Duty to Act

With respect to the second element, the Government concedes that "it owes Chang a duty to adjudicate [the Application,]" but it correctly notes that Mr. Chang lacks any right to compel the Government to act within a specific time. (ECF No. 10 at 17). As discussed above, Section 1158(d) does not create a legally enforceable right to sue, and the Government therefore "do[es] not owe [Mr. Chang] a duty to adjudicate [his] application within the time frames provided in" that statute. Fangfang Xu v. Cissna, 434 F. Supp. 3d 43, 57 (S.D.N.Y. 2020).

### c. Availability of Alternative Remedies

The final element—whether an alternative remedy exists, see Benzman, 523 F.3d at 119—also weighs against Mr. Chang because the APA constitutes an alternative remedy for obtaining the relief Mr. Chang seeks, "thus depriving this Court of subject matter jurisdiction over

[his] mandamus claim." Konde v. Raufer, No. 23 Civ. 4265 (JPC), 2024 WL 2221227, at *5 (S.D.N.Y. May 16, 2024).[9]

* * *

For the reasons stated above, we respectfully recommend that the Motion be granted as to the Mandamus Claim, which should be dismissed without prejudice. See Ahmad v. United States Citizenship & Immig. Servs., No. 23 Civ. 3332 (ES) (CLW), 2024 WL 3272832, at *5 (D.N.J. July 2, 2024) (dismissing similar claim without prejudice for lack of jurisdiction).

### B. The APA Claim

In the APA Claim, Mr. Chang asserts that the Government's "delay in adjudicating [the Application] is unreasonable and [therefore] violat[ive] of the [APA.]" (ECF No. 1 at 3). The Government argues that the Complaint fails to establish that it has "unreasonably delayed any agency action" and therefore fails to state a claim under the APA. (ECF No. 20 at 19–25).

#### 1. Legal Standard

The APA provides that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Courts are permitted to "compel agency action unlawfully withheld or unreasonably delayed[,]" except where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." Id. at §§ 701(a)(1)–(2); 706(1). "[T]he passage of time cannot, standing alone, support [a claim for unreasonably delayed administrative action]." Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005). Rather,

---

[9] Mr. Chang argues in his Opposition that the APA provides only a "theoretical[ ] remedy[.]" (ECF No. 13 at 3). The Court is unconvinced; the APA is indeed an alternative remedy "even though [the Complaint] fail[s] to adequately plead" such a claim. See Cohen v. Jaddou, No. 21 Civ. 5025 (PAC), 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023).

determination of whether a delay is unreasonable is "a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003).

To determine the reasonableness of a delay for purposes of an APA claim, courts apply the following factors originally set forth in Telecommunications Research & Action Center v. Federal Communications Commission, 750 F.2d 70 (D.C. Cir. 1984) (the "TRAC Factors"):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Telecomms. Rsch. & Action Ctr., 750 F.2d at 80; see Boussana v. Johnson, No. 14 Civ. 3757 (LGS), 2015 WL 3651329, at *8–9 (S.D.N.Y. June 11, 2015) (applying TRAC Factors in assessing reasonableness of government's delay of green card application adjudication); L.M. v. Johnson, 150 F. Supp. 3d 202, 207 (E.D.N.Y. 2015) ("In cases where the petition is seeking to compel action by immigration authorities, courts utilize the six-factor test articulated in [TRAC] to determine whether relief under the APA is warranted.") (quoting Hoo Loo v. Ridge, 04 Civ. 5553 (DLI), 2007 WL 813000, at *4 (E.D.N.Y. Mar. 14, 2007)).

   2. **Application**

Applying the TRAC Factors, the Court concludes that the Complaint fails to allege that the Government has unreasonably delayed adjudication of the Application.

### a. Rule of Reason

First, as noted above, USCIS considers asylum applications under the LIFO policy, the goal of which is to "deter individuals from using the asylum backlog solely to obtain employment authorization by filing frivolous, fraudulent, or otherwise non-meritorious asylum applications." AFFIRMATIVE ASYLUM INTERVIEW SCHEDULING, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last visited Feb. 10, 2025). Courts addressing claims like Mr. Chang's have found that the LIFO policy constitutes a "rule of reason that satisfies the first TRAC [F]actor." Cissna, 434 F. Supp. 3d at 53–54; see also Liu v. Wolf, No. 19 Civ. 410 (PGG), 2020 WL 2836426 at *8 (S.D.N.Y. May 30, 2020); Zhu v. Cissna, No. 18 Civ. 9698 (PA), 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019).

In his Opposition, Mr. Chang calls the LIFO policy "inequitable" in that it "prioritizes newer applications over long-pending cases" like his own. (ECF No. 13 at 5). Although Mr. Chang's frustration is understandable, it does not undermine the LIFO policy as a soundly established rule of reason. See, e.g., Cissna, 434 F. Supp. 3d at 53 ("It is true that the LIFO rule forces asylum applicants who filed earlier to bear the brunt of those delays. But this is a byproduct of a reasoned attempt to address mounting issues with the asylum application process."). The Court therefore finds that the first TRAC Factor weighs in the Government's favor.

### b. Congressional Guidance

The second TRAC Factor directs courts to consider whether Congress has provided a timetable that could supply content for the rule of reason. Telecomms. Rsch. & Action Ctr., 750 F.2d at 80. Through Section 1158(d)(5), Congress provided a timeframe for USCIS to consider asylum applications but did not make it mandatory and did not "create any substantive or

procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7); see also Zhang v. Wolf, No. 19 Civ. 5370 (DLI), 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020) (observing that Section 1158(d)(5) includes the qualifying phrase "absent exceptional circumstances," "suggest[ing] that Congress intended that the timeline not apply while the USCIS is dealing with an exceptional level of asylum applicants"). Thus, the second TRAC Factor does not weigh strongly in any party's favor. See Cissna, 434 F. Supp. 3d at 53 ("[T]he Court does not ascribe much significance to [Section 1158(d)'s] timetable."); Liu, 2020 WL 2836426, at *9 ("Given Congress's decision that the schedule it set forth would not be binding, this Court cannot give that schedule binding effect here.").

### c. Interests Prejudiced by Delay

The third and fifth TRAC Factors, which courts often analyze together,[10] consider the nature and extent of the interests prejudiced by delayed adjudication of a request for administrative action. Telecomms. Rsch. & Action Ctr., 750 F.2d at 80. In support of these factors, the Complaint alleges that the "delay in processing [the Application] has caused [Mr. Chang] . . . emotional distress and uncertainty about [his] legal status in the United States." (ECF No. 1 at 4). It also alleges that, in waiting for a decision as to the Application, Mr. Chang has

---

[10] See, e.g., Zheng v. Garland, No. 22 Civ. 6039 (AMD), 2024 WL 333090, at *6 (E.D.N.Y. Jan. 29, 2024) (addressing third and fifth TRAC Factors together, observing that they each "concern the impact to human health and welfare and the nature and extent of the interests prejudiced by the delay"); Cissna, 434 F. Supp. 3d 43 at 53–54 ("Under the third and fifth TRAC factors, the Court looks to the nature and extent of the interests prejudiced by the delayed adjudication."); Boussana, 2015 WL 3651329, at *9 ("Courts generally analyze the third and fifth factors together.").

accumulated debts and been evicted from his home (id.), in part due to the fact that he faced a delay in the renewal of his work authorization. (ECF No. 13 at 8).

The Court concludes that Mr. Chang's circumstances, although unfortunate, do not tip the third and fifth TRAC factors in his favor. Indeed, emotional distress and uncertainty regarding one's legal status are harms "inherent in the asylum application process[,]" Cissna, 434 F. Supp. 3d at 54, and are therefore "not so extreme or unusual as to plausibly outweigh the other factors favoring [the Government,]" Rashidian v. Garland, No. 23 Civ. 1187 (ACR), 2024 WL 1076810, at *9 (D.D.C. Mar. 8, 2024). And although Mr. Chang attributes his debt and resulting eviction to the Government's delay in renewing his work authorization, he concedes that his authorization did not expire and was renewed on May 2, 2024. (See ECF No. 13 at 8). Consequently, the Court is unconvinced by Mr. Chang's assertion that the Government's delay in adjudicating the Application injured his health and welfare and concludes that the third and fifth TRAC factors do not tip the scales in any party's favor.[11]

### d. Effect of Expediting Review

The fourth TRAC Factor provides that "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority." Telecomms. Rsch. & Action Ctr., 750 F.2d at 80. Assessing this TRAC Factor, courts have "refuse[d] to grant relief, even [when] all the other factors considered in TRAC favor[ed] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." L.M., 150 F. Supp. 3d at 213; see Xu v. Nielsen, No. 18 Civ. 2048 (BMC), 2018 WL

---

[11] We also observe that requiring the Government to act on the Application now would not mitigate the harms Mr. Chang faces, given that he is not guaranteed to receive a favorable decision as to the Application and has an active work authorization.

2451202, at *2 (E.D.N.Y. May 31, 2018) ("[T]he competing-priority issue is weighty.  There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit.  That factor should not give him any advantage . . . .").  On this basis, the Court concludes that the fourth TRAC Factor resolves in favor of the Government.  See Chen v. Wolf, No. 19 Civ. 9951 (AJN), 2020 WL 6825681, at *6 (S.D.N.Y. Nov. 20, 2020) (concluding under similar circumstances that the fourth TRAC Factor "strongly favor[ed] Defendants").

### e. Bad Faith

Finally, as to the sixth TRAC factor, the Complaint does not allege any bad faith with respect to the delay in adjudicating his application, meaning this factor favors neither party.  See Qi v. United States Citizenship & Immig. Servs., No. 23 Civ. 8843 (JLR), 2024 WL 2262661, at *7 (S.D.N.Y. May 17, 2024) ("Plaintiff does not allege bad faith, unfairness, or other impropriety, so the sixth TRAC factor is neutral.").

\* \* \*

Finding that the first and fourth TRAC factors significantly favor the Government and that the others are neutral, we conclude that the Complaint fails to state a claim under the APA.  We therefore respectfully recommend that the Motion be granted as to the APA Claim.  We recommend, however, that the APA Claim be denied without prejudice because, although the Government's delay has not been unreasonable to date, it may become unreasonable if the Government defers action to a greater degree.  See Ahmad, 2024 WL 3272832, at *7 ("This dismissal is without prejudice to renewal, should Plaintiffs' applications remain pending to an unreasonable degree.").

C. **Declaratory Relief**

The Complaint requests relief that is declaratory in nature, such as (1) a "[d]eclar[ation] that the delay in adjudicating [the Application] is unreasonable and unlawful" and (2) an "[a]cknowledg[ment] [that Mr. Chang's] dire financial situation . . . [was] exacerbated by the delay in processing [the Application.]" (Id. at 5). Mr. Chang is not entitled to this relief because "[s]ome basis [for relief] must exist in another claim to accompany a declaratory judgment." Zhang, 2020 WL 5878255, at *7 (citing Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp, 108 F.3d 17, 21 (2d Cir. 1997) ("The [Declaratory Judgment Act] is procedural in nature, and merely offers an additional remedy . . . in any case of actual controversy . . . provided that the claim for declaratory relief is pleaded in accordance with Rules 8 and 10 of the Federal Rules of Civil Procedure.")). Because the Court finds that the Complaint fails to state a claim as to the APA Claim, we conclude that Mr. Chang is not entitled to a declaratory judgment.

D. **Leave to Amend**

Mr. Chang also requests leave to amend the Complaint. (See ECF No. 13 at 1, 17) (requesting that the Court deny the Motion or, "[i]n the alternative, . . . grant [him] leave to amend [his] complaint to address any deficiencies"). Federal Rule of Civil Procedure 15(a)(2) provides that "leave to amend a complaint shall be 'freely' given when 'justice so requires,' though a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" Santiago v. Pressley, No. 10 Civ. 4797 (PAE), 2011 WL 6748386, at *5 (S.D.N.Y. Dec. 23, 2011) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200–01 (2d Cir. 2007)). "A court should generally grant a pro se plaintiff 'leave to amend at least once when a liberal reading of the complaint gives any indication that a

valid claim might be stated.'" Brown v. Volpe, No. 15 Civ. 9004 (PAE), 2017 WL 985895, at *8 (S.D.N.Y. Mar. 13, 2017) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

For the reasons explained above, any immediate amendment of the Complaint would be futile, and we therefore recommend that Mr. Chang be denied leave to replead at this time.

## V. CONCLUSION

Consistent with the above, we respectfully recommend that the Motion be GRANTED and that the Complaint be DISMISSED WITHOUT PREJUDICE.

Dated:     New York, New York
           February 11, 2025

                                            _____
                                            SARAH L. CAVE
                                            **United States Magistrate Judge**

          \*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985). If Mr. Chang does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, he may request copies from Defendants' counsel. See Local Civ. R. 7.2.